UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| CAMBRIDGE TAXI DRIVERS AND OWNERS ASSOCIATION, INC. <br>     PLAINTIFF <br><br> v. <br><br> CITY OF CAMBRIDGE, MASSACHUSETTS, <br> NICOLE MURATI FERRER, CHAIR OF THE <br> CAMBRIDGE LICENSE COMMISSION, <br> E. DENISE SIMMONS, MAYOR OF CAMBRIDGE, <br> CHRISTOPHER BURKE, <br> CAMBRIDGE POLICE COMMISSIONER, and <br> RICHARD C. ROSSI, CITY MANAGER <br>     DEFENDANTS | Civil Action No.: |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

NOW COME the above captioned Plaintiff and requests that this Court issue a Preliminary Injunction ordering Defendants to: (1) enforce the City of Cambridge Taxi Rules and Regulations against all vehicles operating for hire in the City of Cambridge, including so-called Transportation Network Companies ("TNCs"); and (2) to order TNCs not in compliance with applicable city codes and insurance laws, i.e., vehicles operating with private plates and using personal insurance policies to operate for hire, to cease operation in the City of Cambridge until they have complied with the existing taxi regulations.

I.    INTRODUCTION

Plaintiff, an organization whose members are taxicab owners and operators, have brought the instant claim to demand that regulations are uniformly enforced to similarly situated businesses. The City is arbitrarily violating the Plaintiff's members and other taxi companies'

constitutional rights accorded to them under the Fourteenth Amendment to the U.S. Constitution as the City is allowing Uber Technologies, Inc. ("Uber"), Lyft, Inc. ("Lfyt"), and Side.Cr, LLC ("Sidecar"), so-called Transportation Network Companies ("TNCs"), to operate without adhering to the requirements of Taxi Rules and Regulations adopted by the City of Cambridge (the "City").  The City failing to take any action to regulate the TNCs violates Plaintiff's rights to equal protection and due process without a rational basis.

II.    FACTS

The facts are drawn from the allegations in the Verified Complaint and, to the extent not set forth below, are incorporated herein.

The Cambridge taxi industry is highly regulated by state statutes, city rules and ordinances that specify how medallion owners, drivers and radio associations must operate together.  These legal controls are designed to ensure that taxi services in Cambridge will operate safely, reliably and without discrimination.

The Massachusetts legislature has given the City of Cambridge, and all other cities and towns across the Commonwealth, authority to regulate all vehicles used for the conveyance of persons for hire from place to place.  See M.G.L. c. 40, § 22 and M.G.L. c. 159.  The City, pursuant to the powers vested in it by the Massachusetts legislature, through the License Commission and pursuant to City of Cambridge Ordinance c. 5.20 enacted the Taxicab Rules and Regulations, a 63 page document governing the taxicab industry (see Exhibit A) (hereinafter "Taxi Regulations").  The current version of Taxi Regulations is the product of decades of revisions, designed to protect consumers, ensure public safety, safeguard competition, and provide non-discriminatory taxi services to all areas of the city and to the elderly and disabled.

The Plaintiff's members and all medallion owners operating in Cambridge have invested significant capital and resources to develop systems of infrastructure that meet the City's broad requirements.  The rules are elaborate, highly detailed and very restrictive, controlling virtually every aspect of the taxi businesses.  Cambridge's Taxi Regulations are designed to ensure that Cambridge's taxi services are safe, reliable and non-discriminatory.  The City issues a limited number of taxi licenses, called taxi medallions.  A taxicab cannot operate in Cambridge without one of the 257 city-issued taxi medallions.  The City has enacted numerous regulations with which that taxi operators must comply.  TNCs are not required to comply with the majority, if any, of these regulations.

The hallmark of the marketplace in transportation services created by the heavily regulated industry had been competition on a level playing field.  Taxi owners and drivers worked in a competitive environment, all subject to the same regulations – until the insurgence of unregulated providers.

The For-Hire Transportation business consists of four simple elements, whether the service is provided by a taxi or a TNC: a driver, a vehicle, a passenger and payment.  These elements do not depend on how the connection between driver and passenger is made, whether visual (by street hail or taxi queue), or electronic (by telephone, smartphone or web site).  For decades the City heavily regulated all For-Hire Transportation providers under uniform rules.  The rules were designed to protect the public, regulate traffic, address congestion and provide public service.

The de facto taxi companies (such as UberX, Lyft and Sidecar) do exactly the same thing that traditional taxi companies do. They dispatch drivers to passengers who pay fares based on the time and distance traveled. That the de facto taxi companies dispatch the car and driver via

smartphone does not distinguish their business activity from that of traditional taxis, which also now use smartphones as one means of connecting driver and passenger. TNCs are an unlicensed taxi service.

Every TNC driver operating in the City of Cambridge must, under the provisions of the Taxi Regulations ordinance quoted above have a medallion. None of them do, and all TNC drivers in Cambridge are, therefore, operating illegally. This massive illegal operation puts the public and consumers at risk in many ways.

Use of a smartphone app does not change the nature of the business. It does not alter the need for uniform rules for all who engage in it. Use of an app merely provides an alternative means of dispatch and payment. The service provided remains For-Hire Transportation. An app does not make a car safer, qualify or train a driver, protect the passenger, or insure the public when accidents occur. Because cars, drivers and passengers exist and travel in the real world, not the virtual world, the same public safety concerns exist regardless of how passenger and driver connect. Therefore, the rules governing the activity should be substantially the same for all.

Plaintiff seeks a preliminary injunction to force the Defendants to apply the existing Taxi Regulations to the TNCs.

III.     **ARGUMENT**

**A.     Standard for Relief**

A preliminary injunction seeks to preserve the status quo, pending a determination on the merits. *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995).

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the Court may issue a preliminary injunction if the Plaintiff can demonstrate: 1) a substantial likelihood that Plaintiff will succeed on the merits; 2) a potential for irreparable harm to the Plaintiff if the injunction is

not granted; 3) the balance of the hardship to the Defendants if enjoined and the hardship to Plaintiff if the injunction is not granted, and; 4) the effect of the injunction on the public interest. *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 443 F.3d 13, 18 (2006).  A preliminary injunction is particularly appropriate where, as here, there is a deprivation of constitutional rights.  See *McLaughlin by McLaughlin b. Boston School Committee*, 938 F. Supp. 1001 (D. Mass. 1996).  In this case, the Plaintiff has more than adequately satisfied the requirements for the issuance of a preliminary injunction.

**B.     Plaintiff has a substantial likelihood of success on the merits.**

     1.     *Defendants have violated the Takings Clause by authorizing TNCs to provide "de facto" taxi services without buying or leasing medallions.*

The Fifth Amendment to the U.S. Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation."  This protection is designed to prevent the state and local government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

The City of Cambridge expressly limited the number of taxicabs medallions issued.  The City of Cambridge expressly provided that the medallions were assignable, and provided specific rules relative to the assignment.  The City of Cambridge required that each transfer was approved by the City, and acknowledged that the medallions were financed in the regulations.  In addition, the City of Cambridge auctioned medallions off in order to generate revenue for the City.  The medallions were auctioned for $450,000 each.  Under the circumstances and for many decades, the City of Cambridge pursuant to its own ordinances, fostered and participated in the assignment of the taxicab medallions.  The City created a public market place for the assignment

for taxicab medallions. As a result, the City created more than just a mere personal permit granted by a governmental body. Medallions were securely and durably owned and marketable. The Plaintiff's members have a property interest in their taxi medallions.

In Massachusetts, taxicab owners have a property interest in medallions. *See Town Taxi Incorporated v. Police Comm'r of Boston*, 377 Mass. 576, 387 N.E.2d 129 (1978), *Sebago v. Tutunjian*, 85 Mass.App.Ct. 1119 (2014) (unpublished disposition); *Ilacqua v. Ilacqua*, 75 Mass.App.Ct. 1102 (2009) (unpublished disposition). As a result, similar to due process disputes over taxicab licenses or permits, courts look to the local legislation to determine the existence and extent of a property interest. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 265-66 (5th Cir.2012) (addressing New Orleans taxicab ordinance); *Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis*, 572 F.3d 502 (8th Cir. 2009) (examining Minneapolis ordinance uncapping number of transferable taxi licenses); *Witharana v. NYC Taxi Limousine Comm'n*, 2013 WL5241987 (E.D.N.Y. Sept. 17, 2013) (addressing New York City taxi licensing system); *Speed's Auto Services Group, Inc. v. City of Portland, Or.*, Case No. 3:12-CV-738-AC, 2013 WL1826141 (D. Or. Apr. 30, 2013) (addressing constitutional challenges to Portland cab ordinance); *Boonstra v. City of Chicago*, 214 Ill. App. 3d 379, 381, 574 N.E.2d 689, 691 (Ill. App. Ct. 1991).

The TNCs have been and continue to provide For-Hire Transportation services without buying or leasing medallions or otherwise complying with the City Taxi Regulations. Accordingly, the City is taking exclusive rights from medallion owners and transferring them to TNCs without any compensation, let alone the just compensation that the Takings Clause requires. The Defendants' actions also deprive Plaintiff of the fundamental property right that the City expressly granted with the sale of the medallion: the exclusive right of medallion owners

to provide For-Hire Transportation in the City. This deprivation has and will continue to seriously devalue the Plaintiff's members medallions. Therefore, there is a substantial likelihood that Plaintiff will prevail on their violation of Takings Clause claim.

> 2. *Defendants' actions in continuing to enforce taxi regulations on Plaintiff but not against TNCs deprives Plaintiff of their rights under the Fourteenth Amendment of the U.S. Constitution.*

Under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, a statute will be upheld if it is rationally related to the furtherance of a legitimate state interest. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *Kittery Motorcycle, Inc. v. Rowe*, 320 F.3d 42, 47 1st Cir. (2003). While the rational basis inquiry may be deferential, it is not "toothless". *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).

In the instant case, Defendants have turned a blind eye to TNCs' failure to adhere to regulations imposed on taxi operators, and in fact will permit TNCs to operate without compliance, including the requirements to: purchase a medallion; pay annual license fees; maintain commercial liability and worker's compensation insurance; operate only newer, regularly inspected vehicles; satisfy driver-licensing requirements, and pay thousands of dollars annually per medallion in City and State fees and taxes.

There are numerous disparities in treatment of taxi companies and TNCs. For example, once taxi operators have a license, they must abide by a strict standard of rules, requiring them not to possess alcohol in their vehicle, not to talk on a cell phone, not to smoke or permit smoking. Again, TNCs do not have to meet any such requirements.

The City requires taxi operators to invest in and operate only cars that are of a certain age and body style, and are subject to regular City inspections, but the City allows de facto taxi companies to deploy private drivers in their own personal cars of any age or condition with no

inspection requirement. The City requires that all taxis have a protective barrier of metal and lexan between the front and back seats. These barriers not only protect drivers from assault and theft but also protect the driver from impaired passengers that may interfere with the driver's ability to operate the taxi thereby causing an accident. TNCs have no such requirement.

All taxi drivers must undergo a background check that includes criminal record, sex offender registry and driving record. TNCs do not have to follow the same background check process. The City requires taxi operators to maintain expensive primary commercial liability insurance that applies at all times to the taxis, but TNCs are not required to carry such commercial insurance and are knowingly permitted to give uninsured rides to unwary residents and visitors without insurance. Moreover, there is currently no available insurance specifically for TNCs.

The City sets meter rates for traditional taxis that apply to all taxi rides, even when taxis accept passengers via a smartphone dispatch in an identical fashion as the de facto taxis, yet the City permits TNCs to charge any rate, and to impose large surcharges during times of high demand.

The City requires many owners of taxis to buy and operate very expensive wheelchair accessible vehicles, but it imposes no such obligation on the de facto taxi companies. Such arbitrary favoritism damages the Plaintiff by reducing taxicab owners and drivers revenues. It also seriously handicaps their ability to compete fairly against the de facto taxi companies to recruit drivers, which threatens to destroy their businesses entirely. The de facto taxi drivers working for a TNC can ignore this requirement without any adverse consequence.

Defendants cannot point to <u>any</u> rational basis or legitimate state purpose for enforcing the City's regulations against taxicab companies but not against the de facto taxi companies.

As previously stated, the cost of purchasing or leasing a medallion can be in excess of Five Hundred Thousand ($500,000.00) Dollars, and there are many additional costs, including commercial insurance and license fees that are required by the City. Plaintiff's members are put at a substantial economic disadvantage to TNCs. Moreover, Defendants have continued to allow TNCs to charge any fare the driver chooses. Taxi operators, however, do not have the same opportunity to financially prosper, as they may charge only the rates permitted by the City. No explanation can or has been presented by the Defendants for the disparate treatment of taxi operators and TNCs. While the Equal Protection Clause often permits government to draw distinctions that are rationally related to legitimate governmental interests, the distinctions summarized above and detailed below do not pass constitutional muster. They are arbitrary, fundamentally unfair and unconstitutional. The City has arbitrarily forced participants in the same business to operate by very different rules.

The constitutional protections of equal protection and due process rest on bedrock principles of fundamental fairness. Under our constitutional system, government must apply reasonable rules fairly to similarly situated persons. People engaging in the same business activity must be held to the same rules. The rules must rationally relate to a legitimate governmental objective. The City's disparate treatment of taxi owners and drivers and TNCs violates all of these principles.

Requiring the TNCs to comply with the taxicab regulations is not only necessary to protect the health, safety and welfare of the public, but ensures the "same level playing field" for all taxicab operators, regardless of whether the rides are being generated by telephone, hailing a taxicab on the street or use of an internet app-based system. This irrational economic disparity

between similarly situated operators for hire violates the Due Process and Equal Protection clauses of the 14th Amendment of the Constitution.

Principles of fundamental fairness also animate the constitutional right to just compensation when the government takes private property. That right is particularly important where, as here, the government itself created the property right, sold it to private parties and developed a system under which hundreds of private parties were induced and required by government to invest and risk hundreds of millions of dollars as a precondition to engaging lawfully in business. These constitutional protections – equal protection, due process and just compensation – allow people to take investment risks and allow businesses to compete fairly.

Therefore, Plaintiff has a substantial likelihood of demonstrating that Defendants have violated the Equal Protection Clause of the U.S. Constitution.

### C. Irreparable Harm to the Plaintiff

Violations of fundamental constitutional rights always constitute irreparable harm. *Dunn v. Blumstein*, 405 U.S. 330, 351 (1972). In this case, there are violations of Plaintiff's constitutional rights, as the Plaintiff's property rights in their medallions are being taken without just compensation in violation of the Takings Clause and Defendants have arbitrarily set different requirements for TNCs and taxi owners and drivers by failing to enforce the City's Taxi Regulations against TNCs.

Defendants' disparate treatment of TNCs also irreparably harms the Plaintiff and other taxi owners and drivers by diverting the ridership base of licensed taxis to the unlicensed TNCs, thereby causing substantial economic harm to Plaintiff. By declining to extend the requirement to TNCs to purchase or lease medallions, Defendants are irreparably harming Plaintiff's ownership interest in their medallions.

### D. Lack of Harm to the Defendants

There will be no harm suffered by the Defendants, as they will be required to enforce the Taxi Regulations that they currently have as to TNCs.  Defendants have a constitutional obligation to apply the law fairly and consistently, and as a result, they suffer no harm when they are required to adhere to their constitutional obligations.

### E. Public Interest

The public interest will be served by the issuance of the injunction, as the majority of the City's Taxi Regulations that are in place to protect the public welfare. The current version of the Taxi Regulations is the product of decades of revisions, designed to protect consumers, ensure public safety, safeguard competition, and provide non-discriminatory taxi services to all areas of the City and to the elderly and disabled.  Allowing the TNCs to operate without compliance with the City's Taxi Regulations poses a serious risk of harm to the public.

Requiring the TNCs to comply with the taxicab regulations is not only necessary to protect the health, safety and welfare of the public, but ensures the "same level playing field" for all taxicab operators, regardless of whether the rides are being generated by telephone, hailing a taxicab on the street or use of an internet app-based system.

## III. CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court issue a preliminary injunction, requiring the City to enforce the existing taxi regulations against TNCs.

                Respectfully Submitted,
                Plaintiff,
                By their Attorneys,

                __/s/ Jenifer M. Pinkham_____
                Jenifer M. Pinkham
                BBO #658031
                Tiffany L. Stichel
                BBO #672713
                Schlossberg, LLC
                35 Braintree Hill Office Park
                Suite 204
                Braintree, MA 02184
                781.848.5028
                jpinkham@sabusinesslaw.com

Dated: June 29, 2015

G:\Cambridge Taxi Drivers & Owners Association, Inc. - CY015\CTDOA v. City of Cambridge - 002\Docs\MemoPI062916.docx