UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMBRIDGE TAXI DRIVERS AND OWNERS ASSOCIATION, INC., <br>                              Plaintiff <br><br> v. <br><br> CITY OF CAMBRIDGE, MASSACHUSETTS, NICOLE MURATI FERRER, CHAIR OF THE CAMBRIDGE LICENSE COMMISSION, E. DENISE SIMMONS, MAYOR OF CAMBRIDGE, CHRISTOPHER BURKE, CAMBRIDGE POLICE COMMISSIONER, and RICHARD C. ROSSI, CITY MANAGER, <br>                              Defendants | Civil Action No. 16-cv-11357-NMG |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12, Defendants City of Cambridge, Nicole Murati Ferrer, Chair of the Cambridge License Commission, E. Denise Simmons, Mayor of Cambridge, Christopher Burke, Cambridge Police Commissioner, and Richard C. Rossi, City Manager (collectively, the "Defendants") respectfully request that this Court dismiss the Plaintiff Cambridge Taxi Drivers and Owners Association, Inc.'s ("Plaintiff" or the "Association") Complaint in its entirety. Plaintiff's Complaint contains five counts, only two of which are substantive claims for relief – Count IV, alleging a violation of the Constitution's Takings Clause, and Count VI, alleging a violation of the 14th Amendment's Due Process and Equal Protection Clauses.[1] However, inasmuch as the Plaintiff seeks prospective relief, that relief has been preempted by recent state legislation that prohibits the very type of municipal regulation whose absence the Plaintiff alleges as the basis for its causes of action. Moreover, because the

---

[1] As described in more detail below, Counts I, II and III are prayers for relief, not independent causes of action, and the Complaint contains no Count V.

1

Plaintiff has not – and cannot – demonstrate the necessary elements of its claims, the Defendants respectfully request that the Complaint be dismissed in its entirety.

## FACTS

Plaintiff, "an entity comprised of members who are taxi drivers and owners that operate and engage in the licensed taxi industry in Cambridge", alleges that in failing to enforce the City of Cambridge's (the "City") Taxicab Rules and Regulations (the "Taxi Regulations") against Transportation Network Companies ("TNCs") such as Uber and Lyft, the Defendants have violated Plaintiff's members' civil rights.[2] Plaintiff alleges that in enforcing the City's Taxi Regulations against the taxi industry but not the TNCs, the City has effectuated a taking of the Plaintiff's members' property (namely, the value of their taxi medallions, which Plaintiff alleges to have been decimated by the unregulated operation of TNCs in the City). Plaintiff also alleges that in subjecting the taxi industry to the Taxi Regulations but not TNCs, the City has violated the Due Process and Equal Protection clauses.

As Plaintiff describes, by virtue of the authority delegated by statute, "[t]he Cambridge taxi industry is highly regulated by state statutes, city rules and ordinances and multiple agreements that specify how medallion owners, drivers and radio associations must operate …" *Complaint*, ¶ 9; G.L. c. 40, § 22 and G.L. c. 159. The City's License Commission, pursuant to those state statutes, special acts (including Chapter 95 of the Acts of 1922) and city ordinance, promulgated the City's Taxicab Rules and Regulations (the "Taxi Regulations") which govern the taxicab industry in the City. *Complaint*, ¶ 11. A copy of the Taxi Regulations was attached to the Plaintiff's Complaint as Exhibit A. The City's Taxi Regulations requires that taxicabs have a taxicab medallion, which the City caps in number at 257. *Complaint*, ¶ 16. The Taxi Regulations

---

[2] As it must, for purposes of this Motion to Dismiss, the City assumes the allegations in the Complaint to be true.

further specify that taxicab drivers in the City must be licensed, meet a minimum age requirement, register their taxicab with the City, pay certain taxes, and supply their contact information to the City. *Complaint*, ¶ 17. Taxicab operators in the City must also attend the Cambridge Taxi School, pass a written examination, and receive training from the medallion owner. *Complaint*, ¶ 18.

By contrast, TNCs, which are a relatively new addition to the City's transportation marketplace, are not subjected to the requirements of the Taxi Regulations. *Complaint*, ¶ 19.

However, on July 31, 2016, both houses of the Massachusetts Legislature passed House No. 4570, entitled "An Act regulating transportation network companies." That legislation, which was signed by Governor Baker on August 5, 2016 (a copy of the law, Chapter 187 of the Acts of 2016, is attached hereto as Exhibit A), establishes a state-level regulatory framework for TNCs that includes a division of the Commonwealth's Department of Public Utilities "that shall have jurisdiction over transportation network companies to ensure the safety and convenience of the public, as expressly set forth in this chapter." *Exhibit A*, SECTION 4, Section 2(a). The legislation further sets forth provisions for background checks, insurance requirements, TNC driver certificates, and more. Of particular relevance to the instant case is SECTION 4, Section 10, in which the Legislature prohibits municipalities from imposing additional requirements upon TNCs:

> Except where expressly set forth in this chapter, no municipality or other local or state entity, except the Massachusetts Port Authority, may: (i) impose a tax on or require any additional license for a transportation network company, a transportation network driver or a vehicle used by a transportation network driver where the tax or licenses relate to facilitating or providing pre-arranged rides; (ii) require any additional license for a transportation network company or transportation network driver; or (iii) subject a transportation network company to the municipality's or other local or state entity's rates or other requirements, including but not limited to entry or operational requirements; provided, however, that a

3

municipality or other local or state entity may regulate traffic flow and traffic patterns to ensure public safety and convenience.

# ARGUMENT

## I. Standard of Review

To survive a motion to dismiss, a Complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). This "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 555. Where, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558.

Here, even accepting all of the Plaintiff's allegations as true, the Amended Complaint fails to contain the heft required to show that the Plaintiff is entitled to relief.[3]

## II. Recent State Legislative Action Has Expressly Preempted Local Regulation of TNCs

The outcome sought by the Plaintiff – the imposition of local taxi regulations on TNCs – has now been expressly preempted by state legislation. Pursuant to the Massachusetts Constitution and statute, cities and towns may "exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court…" Amendments to Massachusetts Constitution, Article LXXXIX, section 8;

---

[3] The instant suit parallels one against the City of Boston that has been ongoing since 2015, *Boston Taxi Owners Association, Inc., et al. v. City of Boston, et al.*, D. Mass. Docket No. 15-cv-10100. The City notes that in that case, the Court has dismissed the Plaintiffs' takings claim.

G.L. ch. 43B, §13. On August 5, 2016, Governor Baker signed House No. 4570, which expressly prohibits municipal regulation of TNCs. *Exhibit A*, SECTION 4, Section 10. That express prohibition on municipal regulation is precisely the type of "legislative intent to preclude local action" that constitutes express preemption of any city ordinance or regulation of TNCs. *Bloom v. City of Worcester*, 363 Mass. 136, 155 (1973).

Moreover, the Plaintiff's argument that the City may regulate TNCs pursuant to the power delegated by the Legislature to regulate taxicabs must fail in light of this clear expression of legislative intent. It is apparent that the Legislature: (a) does not consider TNC regulation to be within the ambit of the authority delegated to cities and towns to regulate taxicabs, and (b) has reserved the regulation of TNCs to the Commonwealth. As such, the City cannot be faulted for its alleged failure to regulate TNCs, nor can it be mandated to do so going forward. Because the City's alleged failure to regulate TNCs is the purported basis for the Plaintiff's claims against the Defendants, Plaintiff's claims fail and should be dismissed against all Defendants.

### III. Counts I-III Are Not Independent Causes of Action, but Rather Prayers for Relief

Counts I through III purport to state claims for declaratory judgment (Count I), injunctive relief (Count II), and monetary damages (Count III). Despite Plaintiff's recitation of these as substantive causes of action, they are in fact prayers for relief which are moot unless the Plaintiff prevails on a substantive legal claim. The 1st Circuit has established that the Declaratory Judgment Act (28 U.S.C. § 2201(a) "creates a remedy, not a cause of action." *Buck v. American Airlines*, 476 F.3d 29, 33 n.3 (1st Cir. 2007). Entry of a declaratory judgment is not mandatory and falls within the Court's discretion, to be exercised in view of "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Here, where the Plaintiff asks this Court to declare the rights and obligations of the TNCs, who are not

parties to the litigation and have not been afforded the right to be heard, declaratory judgment would not constitute "wise judicial administration." Moreover, where the requested declaratory judgment would contravene state legislation vesting sole responsibility for regulating TNCs with the Commonwealth, granting the Plaintiff's requested declaratory judgment would not serve the intended purpose of creating certainty for the Plaintiff. Also, requests for injunctive relief and for monetary damages require some underlying cause of action upon which to stand. As such, if the Court dismisses Count IV and VI (the only two substantive claims), Counts I-III should also be dismissed.[4]

## IV. Count IV, Plaintiff's Takings Claim, Fails

Plaintiff's first substantive argument – that the Defendants have unlawfully "taken" the value of its members' taxi medallions – fails because Plaintiff's members have no constitutionally-protected interest in a particular value of their medallions. The takings claim fails for the additional reason that Plaintiff alleges no affirmative government action that effectuated the alleged taking.[5]

### A. Plaintiff's Members Have No Constitutionally-Protected Interest In the Market Value of their Medallions

Plaintiff claims that the Defendants have unlawfully deprived them of the economic value of their medallions by allowing TNCs to operate in Cambridge, thereby eliminating the medallion owners' exclusive right to provide taxi services in the City. However, while Plaintiff's members may argue that they have a property interest in their medallions,[6] they have no

---

[4] The Complaint contains no Count V. Therefore, despite the numbering in the Complaint that indicates the presence of six counts, there are in fact only five counts pled.

[5] This Court has previously dismissed a nearly identical takings claim brought against the City of Boston in civil action number 15-NMG-10100.

[6] Defendants do not concede that the Plaintiff's members have a property interest in their medallions, but instead focus here on what the Plaintiff alleges its members to have been deprived of – not the medallions themselves, but a particular market value of those medallions.

constitutionally protected property interest in the transportation-for-hire market or in their medallions carrying a particular value.

A successful takings claim requires a showing that the City took the Plaintiff's member's private property without just compensation. Plaintiff does not argue, nor could it, that the City took its members' medallions.[7] Instead, Plaintiff argues that the City effectuated the taking by allowing additional, unregulated market entrants (the TNCs), which had the effect of substantially decreasing the value of its members medallions. Plaintiff claims that its members' medallions gave them an exclusive right to engage in the transportation-for-hire industry in Cambridge, and therefore the right to exclude others from that industry. However, Plaintiff's members have no constitutionally-protected interest in their medallions' market value or in the transportation-for-hire market.[8] Moreover, as described above, newly-enacted state law definitively acknowledges the existence of TNCs and regulates their activities.

A hallmark of a property right is the right to exclude others from that property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). Here, however, although medallion owners may exclude others from the use of their medallion, medallion owners have no right to exclude or otherwise control the participants in the transportation-for-hire market in Cambridge and as such, have no property right in that market. The medallion owners cannot have a property interest in a market that is "subject to pervasive Government control,' because the government's ability to regulate in the area means an individual 'cannot be said to possess the right to exclude.'" *Dennis Melancon v.*

---

[7] Plaintiff's members still possess their medallions, and with those medallions, their right to participate in the taxicab industry in Cambridge. That right is, legally speaking, unaffected by the entrance of TNCs to the market. Nothing about the operation of TNCs has affected the right of Plaintiff's members to use their medallions.

[8] Indeed, the transportation-for-hire market is not limited to TNCs and taxicabs, and include subways, buses, shuttles, bicycle and car-rental services, to name a few.

*City of New Orleans*, 703 F.3d 262, 272 (5th Cir. 2012) (quoting *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 216 (Fed. Cir. 1993). At most, medallion owners arguably hold only "a unilateral expectation that regulation would not disrupt the secondary market value" of their medallions. *Id.* at 274.

Here, the medallion owners purchased their medallions knowing that the City could, at any time, alter the number of medallions available under the Taxi Regulations.[9] The City also retains the right, under the Taxi Regulations, to revoke or suspend medallions, or to alter the requirements placed upon medallion holders. Indeed, the City could eliminate the cap on the number of medallions in the City altogether. As the Eighth Circuit held when the City of Minneapolis did just that, even abolishing the cap on medallions would not constitute an unlawful taking because the owners are not entitled to "an unalterable monopoly over the … taxicab market" and taxicab owners "ought to be aware of the possibility that new regulation might even render [their] property economically worthless." *Minneapolis Taxi Owners Coalition v. City of Minneapolis*, 572 F.3d 502 508-509 (8th Cir. 2009). In an industry that Plaintiff acknowledges to be highly regulated, Plaintiff's members have no right to exclude or otherwise dictate the market participants. That alone is fatal to Plaintiff's takings claim.

B. <u>Plaintiff Alleges No Affirmative Act That Would Effectuate a Taking</u>

Even if the Plaintiff could argue that its members have a constitutionally-protected property interest in the transportation-for-hire market, its takings claim would fail for the additional reason that that the Defendants took no affirmative action to deprive the Plaintiff's members of that interest. Plaintiff contends that its members were deprived of their property by the inaction of the City – the failure to enforce the Taxi Regulations against the TNCs – rather

---

[9] The City's medallion requirements are also set forth in Section 5.20 of the Cambridge Municipal Code.

than by taking any action against its members or their medallions. But a taking cannot occur without an affirmative act. *Valles v. Pima County*, 776 F. Supp. 2d 995, 1003 (D. Ariz. 2011) (no taking occurred in the absence of an "affirmative, overt action by the government …"); *Nicholson v. United States*, 77 Fed. Cl. 605, 620 (2007) (holding that the Court of Federal Claims "has consistently required that an affirmative action on the part of the Government form the basis of the alleged taking." Therefore, the Plaintiff's takings claim fails for the additional reason that the City's alleged failure to enforce the Taxi Regulations against TNCs cannot, as a matter of law, form the basis for a claim that the City "took" the "property" of taxicab medallion holders.

> C. <u>Plaintiff's Allegation that the City Fails to Enforce the Taxi Regulations Against the TNCs Does Not Constitute a Regulatory Taking</u>

Even if the Plaintiff could demonstrate that its members have a constitutionally-protected property interest in the transportation-for-hire marketplace (which it cannot) and that the City took that property (which it did not) by failing to enforce the Taxi Regulations against TNCs, Plaintiff's takings claim fails for the additional reason that the Plaintiff cannot show that "some significant restriction [was] placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given." *Maine Educ. Ass'n. Benefits Trust v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012) (quoting *Philip Morris v. Reilly*, 312 F.3d 24, 33 (1st Cir. 2002)). The Supreme Court has set forth a three-pronged test to guide the Court's analysis as to whether a regulatory taking has occurred: (1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (2) the regulation's economic impact on the property owner; and (3) the character of the government action. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Here, none of those inquiries support Plaintiff's claim that a regulatory taking has occurred.

As to the first prong, the Plaintiff's members cannot claim to have any reasonable investment-backed expectation as to the value of their medallions, because the market that confers that value is so highly controlled by government regulation. The Plaintiff's members cannot have reasonably expected that the City could never alter the number of available medallions, that there could never be new market entrants, or even that the medallion system would always exist in its current form. Indeed, as the 1st Circuit has observed, such expectations of market value must be "tempered by the fact that [a market participant] operates in [a] highly regulated … industry." *Franklin Mem. Hosp. v. Harvey*, 575 F.3d 121, 128 (1st Cir. 2009). In addition, "the Supreme Court has recognized that heavy government regulation may diminish a property owner's expectations." *Id.* (citing *Lucas v. S. C. Coastal Council*, 505 U.S. 1003, 1027-28 (1984).

Plaintiff's claim fares no better under the second prong, which asks the Court to analyze the regulation's impact upon the property owner. Here, there is no change in regulation that impacted the medallion owners. Plaintiff alleges no new requirement imposed by the City that impairs the property rights of its members. Instead it alleges that new market entrants, who operate with fewer restrictions than its members, have diluted the value of its members' investments. This argument that its members' property rights have decreased in value by virtue of the City's inaction against TNCs cannot satisfy this prong because Plaintiff can point to no change in regulation that impacted its members.

Similarly, under the third prong, which requires the court to analyze the "character of the government action," the government action here is less intrusive than the action contemplated by the Supreme Court in *Penn Central*, *supra*. There, the Court explained that "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical

invasion by government than when [the] interference arises by some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. at 124. Where, as here, the government is alleged to have failed to act, rather than to have acted overzealously, that inaction cannot be found to constitute interference so substantial as to support a finding that a regulatory taking occurred.

### V.     Count VI Fails to State a Claim for Violation of the Due Process Clause or the Equal Protection Clause

#### a.  Count VI Fails to State a Claim for a Due Process Violation

Plaintiff's Complaint, although it purports to state a claim for violation of the Due Process Clause of the 14th Amendment, articulates no specific theory as to how the City has violated the Due Process Clause here. Plaintiff does not specify whether its claim is one for violation of substantive due process rights or procedural due process rights; in either case, such a claim would fail.

Assuming *arguendo* that Plaintiff intends to state a claim for violation of substantive due process rights in the City's alleged deprivation of its members' property interest in their taxicab medallions, that claim fails for the same reason, described above, that the Plaintiff has not adequately stated a takings claim – because the Plaintiff's members have no constitutionally-protected interest in the value of their medallions or in the transportation-for-hire market. *Section III.A., supra*.

If the Plaintiff intends to state a claim for violation of procedural due process rights, that claim also fails. Here, the only arguable property right articulated by the Plaintiff – in its members' medallions – still belongs to its members. There can be no due process violation where the Plaintiff's members still possess their medallions, and with them, the right to operate taxicabs in the City.

### b. Plaintiff's Equal Protection Claim Fails

To state a claim for violation of the Equal Protection Clause, Plaintiff must show that its members are similarly situated to TNC drivers/operators, that they are being treated differently, and that there is no "rational relationship between the disparate treatment and a legitimate government objective." *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 145 (1st Cir. 2001); *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013). In the area of economic regulation such as those at issue here, rational basis review affords the government a "strong presumption of validity." *Kittery Motorcycle, Inc. v. Rowe*, 320 F.3d 42, 47 (1st Cir. 2003) (internal citation omitted).

Here, despite the Plaintiff's characterization, there exist several important distinctions between taxicab operators and TNC operators. Taxis are hailed on the street or at public taxi stands (or, in some cases, by smartphone app); TNC rides are arranged solely through a smartphone app and TNC drivers may not offer their services at taxi stands or be hailed on the street. TNCs require a previous relationship with a customer (an account) before a customer may arrange a ride. TNC fare rates may vary based on traffic conditions; taxicabs offer customers the certainty of a metered fare dictated by regulation. Moreover, a taxicab customer's relationship is with the driver; a TNC customer's relationship is with the TNC itself, to whom payment is submitted. That both provide means of transportation for hire does not mean that they are similarly situated.

Even if the Court were inclined to find that taxicabs and TNCs are similarly situated, the City has a rational basis for treating them differently because the Legislature has now indicated its express intent to regulate TNCs, rather than delegating that power to cities and towns, unlike its delegation of the power to regulate taxicabs. The existence of TNCs is relatively new, and was not contemplated when the City promulgated its Taxicab Regulations. The City, over the

past three years, engaged in an ongoing process of evaluating whether, and what, new regulation may be necessary in light of the proliferation of TNCs. These efforts reach back to 2013, when the City convened a Cambridge Advisory Taxicab Subcommittee comprised of government officials and private parties charged with making recommendations to modernize the taxi industry. In light of indications from state officials that they would offer legislation aimed at regulating TNCs, but knowing there was increasing anxiety among taxicab owners and operators, the City Council went on record urging state government to "move expeditiously" in issuing regulations that would apply to TNCs. *See* City Council Policy Order Resolutions O-15 and O-24, August 10, 2015. Most recently, the City's License Commission convened a Taxi Industry Working Group that met in late 2015 and early 2016 to discuss possible recommendations.

Amidst these conversations, in 2013, the City attempted to regulate TNCs by citing TNC drivers for having a non-conforming meter device (the smartphone used by TNC drivers rather than a traditional, approved meter). That effort was stymied by the Commonwealth's Division of Standards and ultimately the Superior Court. City of Cambridge v. Gelaye, Uber Technologies, and Division of Standards, Middlesex Superior Court Docket No. 12-03675.

Indeed, as the City urged it to, the Legislature has now spoken. The Legislature itself has differentiated taxicabs from TNCs, and has reserved the regulation of TNCs to the Commonwealth. Having been told by the state that it would step in and promulgate laws and/or regulations, and having been turned away by the Court when the City attempted to hold TNC smartphones to the same standards as traditional metering devices, the City made a rational, reasonable policy decision to support the state's professed intention to regulate in this area and to await the outcome of the Legislature's actions with respect to this matter. That rational policy decision was borne out when the Legislature passed, and the Governor signed, House No. 4570,

and meets the showing required by the City under rational basis review. The Commonwealth itself has determined that taxicabs and TNCs are not similarly situated.

### VI. All Claims Against Mayor Simmons Should Be Dismissed Because She Has No Authority to Enforce the Taxi Regulations

Mayor Simmons is one of nine elected Cambridge City Councilors who, according to the City's charter, are the City's legislative body. By operation of the City's charter, the Mayor of Cambridge is elected from among the nine City Councilors, and "shall be recognized as the official head of the city for all ceremonial purposes" and "shall be chairman of the city council and chairman of the school committee", but it is the City Manager who "shall be the chief administrative officer of the city and shall be responsible for the administration of all departments, commissions, boards and officers of the city." G.L. c. 43, §§ 100, 103. As such, Mayor Simmons is not vested with the authority to enforce (or not enforce) the Taxi Regulations. Nor is Mayor Simmons alleged to have taken any action with respect to the Plaintiff or its members. Therefore, the claims against her should be dismissed in all capacities.

### VII. To The Extent that the Complaint Purports to Assert Claims Against the Individual Defendants in their Individual Capacities, The Individual Defendants Are Entitled to Qualified Immunity

To the extent that Plaintiff has brought claims against Defendants Nicole Murati Ferrer (Char of the Cambridge License Commission), Christopher Burke (Cambridge Police Commissioner), and Richard C. Rossi (Cambridge City Manager) (collectively, the "Individual Defendants") in their official capacities, those claims are claims against the City and are addressed above. *See Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent…"). However, to the extent that the Plaintiff

intends to assert its claims against the Individual Defendants in their individual capacities, the Individual Defendants are entitled to qualified immunity.[10]

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Courts are to examine two questions in resolving a claim of qualified immunity: whether the Plaintiff has alleged facts that make out a violation of a constitutional right, and whether that constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Only when a defendant's alleged misconduct violated a clearly established constitutional right does that defendant lose the protection of qualified immunity. *Id.*

Here, Plaintiff does not – and cannot – show that any of the Individual Defendants violated Plaintiff's members' clearly established constitutional rights. As an initial matter, Plaintiff alleges that the Taxi Regulations have existed for "decades" – long prior to the appointment of Nicole Murati Ferrer as Chair of the License Commission in January, 2016; the appointment of Christopher Burke as Acting Police Commissioner in May, 2016; or the appointment of Richard C. Rossi as City Manager in 2013. Plaintiff does not – and cannot – allege any particular act on the part of any of these Individual Defendants in the promulgation of the Taxi Regulations. The most that can be said about the Individual Defendants is that they have not (yet) revised the Taxi Regulations or ordered that the Taxi Regulations be applied to TNCs.

---

[10] Plaintiff does not affirmatively assert that it is making any claims against the Individual Defendants in their individual capacities, nor do the factual allegations include any allegation that the Individual Defendants acted in anything other than their official capacities.

That alone cannot constitute a violation of any clearly established constitutional right of the Plaintiff, especially where the Legislature has now expressly pre-empted such local regulation. Plaintiff offers no basis for holding any of these three Individual Defendants liable (aside from in their official capacities, which is addressed above); indeed, aside from the caption of the Complaint, none of these three Individual Defendants is mentioned. Against that backdrop, there is no basis on which to conclude that any of these three Individual Defendants took any action to deprive the Plaintiff or its members of any constitutionally-protected right, let alone a "clearly established" constitutional right.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Plaintiff's Complaint be dismissed with prejudice in its entirety.

        Respectfully submitted,

        CITY OF CAMBRIDGE, MASSACHUSETTS, NICOLE MURATI FERRER, CHAIR OF THE CAMBRIDGE LICENSE COMMISSION, E. DENISE SIMMONS, MAYOR OF CAMBRIDGE, CHRISTOPHER BURKE, CAMBRIDGE POLICE COMMISSIONER, and RICHARD C. ROSSI, CITY MANAGER

        By their attorney,

        /s/ Anne Sterman
        Anne Sterman, BBO #650426
        Asst. City Solicitor
        Law Department – City Hall
        795 Massachusetts Avenue
        Cambridge, MA 02139
        (617) 349-4121
        asterman@cambridgema.gov

DATED:    August 16, 2016

## CERTIFICATION UNDER LOCAL RULE 7.1

I hereby certify, pursuant to Local Rule 7.1(A)(2), that I conferred with counsel for the Plaintiffs regarding the instant motion, and was unable to resolve the issues presented therein.

        /s/ Anne Sterman
        Anne Sterman
        Assistant City Solicitor

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 16, 2016.

        /s/ Anne Sterman
        Anne Sterman
        Assistant City Solicitor