United States District Court
District of Massachusetts

```
_____
                            )
Cambridge Taxi Drivers and  )
Owners Association, Inc.     )
                            )
        Plaintiff,          )
                            )
        v.                  )        Civil Action No.
                            )        16-11357-NMG
City of Cambridge, Nicole Murati )
Ferrer, E. Denise Simmons,  )
Christopher Burke and Richard )
Rossi                       )
                            )
        Defendants.         )
_____ )
```

**MEMORANDUM & ORDER**

GORTON, J.

This case involves a dispute between Cambridge Taxi Drivers and Owners Association, Inc. ("plaintiff") and the City of Cambridge, Cambridge Mayor E. Denise Simmons, the Chair of the Cambridge License Commission, Nicole Murati Ferrer, Cambridge Police Commissioner Christopher Burke and Cambridge City Manager Richard Rossi (collectively, "defendants" or "the City"). The plaintiff protests the City's decision not to apply the same regulatory framework to transportation network companies ("TNCs") as it currently applies to taxicabs.

Plaintiff has filed a motion for a preliminary injunction and defendants have responded with a motion to dismiss for failure to state a claim. For the following reasons,

-1-

plaintiff's motion for a preliminary injunction will be denied
and defendants' motion to dismiss will be allowed.

I.    **Background**

  A.   **City Regulation of the Taxi Industry**

    Pursuant to state statute, the taxicab industry in the City
of Cambridge ("the City" or "Cambridge") is regulated by the
Cambridge License Commission ("the Commission").  In exercising
that authority, the Commission requires anyone who drives a
taxicab to possess a license known as a "taxicab medallion."
The City has capped the number of medallions at 257.

    The City has promulgated a comprehensive set of so called
Taxicab Rules and Regulations ("Taxicab Regulations").  Those
regulations define a taxicab as

> [a] motor vehicle licensed and approved by the License
> Commission to carry passengers and articles, and is
> authorized to accept street hails from persons in the
> street.

    The Taxicab Regulations require all taxicab operators,
inter alia, to possess a medallion, meet a minimum age
requirement, pay certain taxes and supply their contact
information to the Commission.  The Taxicab Regulations also
describe the approved manner in which a taxicab in the City can
engage customers.

    Beginning in 2012, companies such as Uber, Lyft and Sidecar
began operations in Boston and surrounding communities.  The

cellular phone, app-based, for-hire transportation services have quickly gained popularity and serve as an alternative to traditional taxicab or livery services.  The new companies rely, to varying degrees, on drivers who provide pre-arranged transportation services in their own private vehicles.

The City of Cambridge has neither issued regulations specifically targeted at such companies nor enforced the Taxicab Regulations against them.

### B.    State Regulation of TNCs

In July, 2016, the Massachusetts General Court enacted and the Governor of Massachusetts signed into law a comprehensive statute, M.G.L. ch. 159A½ ("the Act"), regulating TNCs at the state level.

The Act defines a TNC as

a corporation, partnership, sole proprietorship or other entity that uses a digital network to connect riders to drivers to pre-arrange and provide transportation.

Id. § 1.  The Act also delegates regulation of TNCs to a new state "division" within the Massachusetts Department of Public Utilities. Id. § 2.  That division implements insurance requirements, monitors fare estimates, ensures the safety and annual inspection of TNC vehicles and monitors the accommodation of riders with special needs. Id.  The division also issues permits, which must be annually renewed, to TNCs and it has the

power to conduct hearings and impose penalties on TNCs which are
noncompliant with the Act. Id. §§ 3, 6.

Moreover, the Act ostensibly removes TNCs from local
regulation.  Section 10 provides, in part:

> [N]o municipality or other local or state entity,
> except the Massachusetts Port Authority . . . may
> subject a [TNC] to the municipality's or other local
> or state entity's rate or other requirements . . . .

M.G.L. ch. 159A½, § 10.  The Act does not, however, prevent
municipalities from regulating "traffic flow and traffic
patterns to ensure public safety and convenience." Id.

### C.  Procedural History

In June, 2016, plaintiff filed a five-count complaint, in
which they allege substantive claims for violations of the
Takings Clause (Count IV) and "due process/equal protection"
provisions (Count V) of the United States Constitution.[1]  So-
called Counts I (declaratory judgment), II (injunctive relief)
and III (damages) simply describe plaintiffs' requested relief.
On the same day, plaintiff also filed a motion for a preliminary
injunction to direct defendants to regulate TNCs in accordance
with the local taxicab regulations.[2]

---

[1] Plaintiff mislabeled its complaint.  Although the final count
is labeled "VI," it is the fifth count.
[2] This session has just resolved an almost identical action
brought, on behalf of similarly-situated taxicab owners and
drivers in the City of Boston, by the same plaintiffs' counsel.
See Bos. Taxi Owners Ass'n, Inc. v. City of Boston, Docket No.
15-10100, 2016 WL 7410777 (D. Mass. Dec. 21, 2016); see also

Defendants responded in August, 2016, with a motion to dismiss for failure to state a claim.  Both pending motions are the subjects of this memorandum.

## II.  **Defendants' Motion to Dismiss**

### A.   **Legal Standard**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents

---

Bos. Taxi Owners Ass'n, Inc. v. Baker, Docket No. 16-11922 (D. Mass. Jan. 24, 2017).

incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).

**B.   Application**

    **1.   Counts I and II:  Claims for Declaratory and Injunctive Relief**

Defendants move to dismiss as moot plaintiffs' claims for declaratory and injunctive relief (Counts I and II, respectively) on grounds that the Act preempts municipal regulation of TNCs.  Plaintiff responds that the Act provides an exception under which defendants can still regulate TNCs.

Mootness is a constitutional issue that a court should ordinarily resolve before reaching the merits. <u>ACLU of Mass.</u> v. <u>U.S. Conference of Catholic Bishops</u>, 705 F.3d 44, 52 (1st Cir. 2013).  The mootness doctrine ensures that claims are to be justiciable throughout litigation not only when a claim is initially filed. <u>Id.</u>  The First Circuit Court of Appeals has identified the following instances of cases becoming moot:

1) when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome;
2) when the court cannot give any effectual relief to the potentially prevailing party; and
3) if events have transpired to render a court opinion merely advisory.

<u>KG Urban Enters., LLC</u> v. <u>Patrick</u>, 969 F. Supp. 2d 52, 56 (D. Mass. 2013) (citing <u>Catholic Bishops</u>, 705 F.3d at 52-53).

### a.   Preemption

Under Massachusetts law, a local regulation is preempted if 1) the statute explicitly provides for preemption or 2) the purpose of the state law would be "frustrated" by local regulation such that there is an inference that the legislature intended to preempt "the field". St. George Greek Orthodox Cathedral of W. Mass., Inc. v. Fire Dep't of Springfield, 967 N.E.2d 127, 132 (Mass. 2012) (quoting Town of Wendell v. Att'y Gen., 476 N.E.2d 585, 589 (Mass. 1985)).

Here, the Act expressly prohibits defendants from regulating TNCs:

> [N]o municipality or other local or state entity, except the Massachusetts Port Authority . . . may subject a [TNC] to the municipality's or other local or state entity's rate or other requirements . . . .

M.G.L. ch. 159A½, § 10.

Moreover, the comprehensiveness of the Act creates a strong inference that defendants are barred from regulating TNCs.  For example, the Act creates a new state division to regulate TNCs and contains numerous operational requirements. M.G.L. ch. 159A½, §§ 2, 3. See St. George, 967 N.E.2d at 133-34.

Plaintiff maintains that the Act contains an exception for municipalities to regulate "traffic flow and traffic patterns." Id. § 10.  Thus, according to plaintiff, defendants can still regulate TNCs, by, for instance, applying certain taxi medallion

and driver requirements to TNCs.  Plaintiff's expansive reading
of the exception would, however, render the entire regulatory
scheme of the Act nugatory and would "frustrate" the purpose of
the statute.  The Court therefore concludes that the Act
preempts local regulation of TNCs.

### b.  Mootness

Because local regulation of TNCs is preempted by the new
state statute, plaintiff's claims for declaratory and injunctive
relief are moot.

First, plaintiff petitions the Court to declare that TNCs
must comply with local taxi ordinances.  After enactment of the
new statute, however, defendants cannot regulate TNCs and thus
any declaration of this Court would be strictly advisory. See
New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 18
(1st Cir. 2002) (remarking that it would be "pointless" to
declare the constitutionality of a policy that had been revised
during litigation).

Plaintiff also asks the Court to direct defendants to
regulate TNCs under the current Taxicab Regulations.  That, too,
is moot because such an injunction would require defendants to
violate state law.  Because defendants cannot regulate TNCs,
there is "no ongoing conduct to enjoin". See Town of Portsmouth
v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016).

Accordingly, the Court will allow defendants' motion to dismiss Counts I and II.

Plaintiff also seeks monetary damages (Count III) for the alleged takings, due process and equal protection violations (Counts IV and "VI").  Because a claim for monetary damages can save a claim from mootness even when declaratory or injunctive relief cannot, <u>Cty. Motors, Inc.</u> v. <u>Gen. Motors Corp.</u>, 278 F.3d 40, 43-44 (1st Cir. 2002), the Court will address plaintiff's substantive claims.

### 2.   Count IV:  Takings Claim

#### a.   Legal standard

The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation. <u>Me. Educ. Ass'n Benefits Tr.</u> v. <u>Cioppa</u>, 695 F.3d 145, 152 (1st Cir. 2012).  The clause applies to

> not only the paradigmatic physical taking . . . but also
> to regulatory interferences, which transpire when some
> significant restriction is placed upon an owner's . . .
> property [use] for which fairness and justice require
> that compensation be given.

<u>Id.</u> (citation and internal quotations omitted).

#### b.   Application

Plaintiff's first substantive claim alleges that the City's failure to enforce the Taxicab Regulations against TNCs violates the Takings Clause because it constitutes a taking of property without the payment of just compensation.  Plaintiff contends

that it holds property rights in its medallions which it claims
provide it with the "exclusive means" to engage in the taxi
business.  By eliminating that exclusivity, plaintiff avers, the
City took its property without paying just compensation.

The right to exclude others from one's property is "perhaps
one of the most fundamental" property interests. <u>Lingle</u> v.
<u>Chevron U.S.A., Inc.</u>, 528, 539 (2005).  Assuming, <u>arguendo</u>, that
medallions are property, by purchasing medallions plaintiff
obtained an individual right to enter the transportation-for-
hire market.  Each medallion owner has the right to exclude
others from using his or her medallion and the authority it
confers to provide taxi services.

The owner of a medallion does not, however, possess a
property interest in the transportation-for-hire market itself.
Thus, a medallion owner has no right to exclude others from the
market.  For example, taxi medallion owners may not exclude
other taxi medallion owners from participating in the market.
Nor can they exclude new medallion purchasers when the City
summarily increases the number of available medallions.
Similarly, the aggregation of the rights of all medallion owners
is not immutable.  The Taxicab Regulations did not provide
medallion owners with "an unalterable monopoly" over the
transportation-for-hire market. <u>Minneapolis Taxi Owners' Coal.</u>
v. <u>City of Minneapolis</u>, 572 F.3d 502, 508 (8th Cir. 2009).

The exclusivity of medallion owners' access to the market prior to the arrival of TNCs existed by virtue of the City's regulatory structure, not as a result of the medallion owners' property rights.  Medallion owners have no property interest in the enforcement of the Taxicab Regulations against others. <u>See</u> <u>Town of Castle Rock</u> v. <u>Gonzales</u>, 545 U.S. 748, 766 (2005).

Plaintiff has not alleged that the City has revoked, suspended or impeded its ability to use its medallions. Plaintiff's sole claim is that the loss of market exclusivity caused by the City's failure to enforce the Taxicab Regulations against TNCs has diminished the value of their medallions. Because plaintiff has no right to market exclusivity, it has failed to state a claim upon which relief can be granted. Therefore, defendants' motion to dismiss Count IV will be allowed.

### 3. Count VI: Due Process and Equal Protection Claims

#### a. The Due Process Claim

Although plaintiff includes few factual allegations with respect to its due process claim in the complaint, it suggests in its opposition memorandum that defendants violated its due process rights by taking away its exclusive right to operate taxis in Cambridge.  As discussed above, however, plaintiff does not have a constitutionally protected interest in the

transportation-for-hire market.  Plaintiff's due process claim
thus fails for the same reasons that its takings claim fails.

### b.    The Equal Protection Claim

To bring an equal protection claim against defendants,
plaintiff must identify a policy or custom of the City of
Cambridge that violates its rights. Los Angeles County v.
Humphries, 562 U.S. 29, 36 (2010).

As explained above defendants are preempted from regulating
TNCs.  Consequently, state policy, not municipal policy, now
prevents defendants from regulating TNCs.  Because
municipalities are liable only for their own illegal acts,
Connick v. Thompson, 563 U.S. 51, 60 (2011), defendants cannot
be held liable for the conduct alleged in the complaint. See Yeo
v. Town of Lexington, 131 F.3d 241, 257 (1st Cir. 1997) (Stahl,
J., concurring) (citing Surplus Store & Exch., Inc. v. City of
Delphi, 928 F.2d 788, 791-92 (7th Cir. 1991)).

Therefore, the Court will allow defendants' motion to
dismiss plaintiff's equal protection claim in Count VI.  Because
Count III is merely a request for damages, and the Court has
determined it will allow defendants' motion with respect to
plaintiffs' takings, due process and equal protection claims,
the Court will also dismiss Count III.

### III. __Plaintiff's Motion for a Preliminary Injunction__

Plaintiff's motion for a preliminary injunction will be denied as moot because the Court will allow defendants' motion to dismiss with respect to all of plaintiff's claims.

**ORDER**

For the forgoing reasons,

1) plaintiff's motion for a preliminary injunction (Docket No. 2) is **DENIED** and

2) defendants' motion to dismiss (Docket No. 14) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated January 25, 2017